**No. 26384**

**The People of the State of Colorado v. Jimmy Roger Vandiver**

(552 P.2d 6)

Decided July 12, 1976. Rehearing denied August 3, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Deborah L. Bianco, Assistant, for plaintiff-appellee.

Anthony W. Lanza, P.C., for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Jimmy Roger Vandiver was convicted of sale of narcotics, C.R.S. 1963, 48-5-2,[1] and of conspiracy to sell narcotics, C.R.S. 1963, 40-2-201.[2] Trial of the issues was to the court after the defendant waived a jury trial. Numerous errors have been asserted on appeal. The only issues which merit discussion relate to the sufficiency of the evidence, entrapment, waiver of a jury trial, and the chain of custody of incriminating evidence. We affirm.

The charges against the defendant arose from an incident that occurred on August 28, 1972, a few miles south of Durango, Colorado. Vandiver and a co-defendant, O'Neal, sold heroin to Kenneth P. Brown and David DeChant, who were undercover narcotics agents.[3] The events leading up to this transaction commenced when agent Brown left a note on O'Neal's door instructing O'Neal to call Brown at a certain telephone number. O'Neal had never met Brown before. O'Neal testified that agent

---

[1]Now section 12-22-302, C.R.S. 1973.
[2]Now section 18-2-201, C.R.S. 1973.
[3]O'Neal entered a plea of guilty to sale of narcotics on November 24, 1972. A third defendant, one Hodges, fled the jurisdiction without attending trial and has since not been located.

Brown posed as a drug trafficker, looking for heroin. Two months passed between the time of the first contact and the eventual arrest of the defendants. During the time, O'Neal supplied Brown with a lid of marijuana, but Brown encouraged O'Neal to supply him with a large amount of heroin. According to Brown, O'Neal claimed he was sitting on a quantity of heroin, but he was mostly dealing in marijuana at the time. O'Neal claimed that Brown and agent DeChant were armed during negotiations and that they actually threatened him when he hesitated to go through with the deal.

On the night the sale took place, Brown and DeChant met O'Neal and proceeded to a residence south of Durango, where they met a man named Hodges. O'Neal testified that he also expected to meet Vandiver. Hodges warned Brown that his partner [Vandiver] was outside with a gun and that he would kill Brown if he was a "narc." After the heroin was delivered, Brown gave Hodges $7,100 and O'Neal $3,100 and then made the arrest. A surveillance team was summoned, and Brown instructed them to look for a third person outside. At the same time, Hodges was told to go out on the front porch and tell "Jimmy" not to shoot and to "give himself up." Thereafter, the surveillance team spotted Vandiver walking out of a garage which was located approximately thirty yards in front of the residence. His hands were raised over his head. The surveillance team investigated the garage and found a cocked pistol with a bullet in the chamber lying on the ground near the defendant's wallet. Upon seeing the weapon, the defendant told the police officers to "watch out" because there was "a round in the chamber."

## I.
### Sufficiency of the Evidence

In a criminal case, the evidence necessary to sustain a conviction is proof of guilt of each of the elements of the offense or offenses beyond a reasonable doubt. *Corbett v. People*, 153 Colo. 457, 387 P.2d 409 (1963). In weighing the evidence to determine whether a judgment of acquittal should be granted, the substantial evidence test is employed. The substantial evidence test, which was first announced in *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973), provides:

"[T]hat relevant evidence, both direct and circumstantial may be sufficient to sustain a conviction. Such evidence, when viewed as a whole and in the light most favorable to the prosecution, must be substantial and sufficient to support the conclusion by a reasonable mind that the defendant is guilty of the crime charged beyond a reasonable doubt. On this basis we have held that circumstantial evidence alone may be sufficient to sustain a conviction. *People v. Sanchez*, 184 Colo. 25, 518 P.2d 818 (1974); *see also Corbett v. People, supra; Militello v. People*, 95 Colo. 519, 37 P.2d 527 (1934)." *People v. Zaring*, 190 Colo. 370, 547 P.2d 232 (1976).

■ The evidence against the defendant was sufficient to support a conclusion by a reasonable mind that the defendant was a participant in the heroin sale. Additionally, the evidence, although mainly circumstantial, was sufficient to support the defendant's conspiracy conviction. Conspiracies by nature are covert, and circumstantial evidence alone may prove their existence. *People v. Nelson*, 189 Colo. 260, 539 P.2d 477 (1975); *People v. O'Neill*, 185 Colo. 202, 523 P.2d 123 (1974).

"The circumstances necessary to support a conviction of conspiracy are those which show that the defendants pursued by their acts the same objective, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that same objective. *Abeyta v. People*, 156 Colo. 440, 400 P.2d 431." *Goddard v. People*, 172 Colo. 498, 474 P.2d 210 (1970).

In this case, the defendant positioned himself in a building removed from the situs of the drug transaction, and his job was to cover his partner, O'Neal, in case any trouble developed during the exchange. Their common objective was the successful completion of the drug deal — each performing his own part.

## II.
### Entrapment

■ The defendant contends that he was entrapped as a result of the zealous and forceful acts of agents Brown and DeChant and claims that the drug transaction would not have occurred without their instigation. In *People v. Lee*, 180 Colo. 376, 506 P.2d 136 (1973), we said:

"The defense of entrapment was never intended to be an escape hatch for those who mistakenly sell narcotics to a police officer. When a person who has narcotics for sale is ready, willing, and able to effect a sale with no more than ordinary persuasion, he has not been entrapped and must suffer the consequences for dispensing or selling narcotics. [Cites omitted.]"

*Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), further limited the entrapment defense and held that "the entrapment defense 'focus[es] on the intent or predisposition of the defendant to commit the crime,' . . . rather than upon the conduct of the Government's agents." *See also United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *People v. Simmons*, 179 Colo. 431, 501 P.2d 119 (1972); *Mora v. People*, 172 Colo. 261, 472 P.2d 142 (1970).

■ We recognize that something more than ordinary persuasion characterized Brown's attempts to purchase narcotics from the defendant and O'Neal. Brown fashioned himself as a "gangster" and O'Neal testified that he was actually afraid of him. Both Brown and DeChant carried firearms during their contacts and negotiations with O'Neal which

spanned a six-week period of time. Brown may have succeeded in casting himself as a violence-prone person, but the record offers only sketchy evidence that Brown may have threatened the use of force in order to consummate the drug transaction. In short, the record does not substantiate that protected rights of either O'Neal or the defendant were violated by the police agents. *Hampton v. United States, supra.* Absent outrageous conduct by the officers violating fundamental standards of due process, the focus remains on the defendant.

In this case, O'Neal admitted giving drugs to Brown prior to the criminal episode in issue. On the night of the heroin transaction, O'Neal initiated the contact with Brown and DeChant, directing them to the residence south of Durango. There, the defendant performed the sinister task of providing cover for O'Neal and Hodges — with a cocked pistol containing a chambered round. The predisposition of these defendants to commit the crime was sufficiently established to erode the defense of entrapment.

### III.
### Waiver of Jury Trial

Prior to the arrest, a Denver television station was advised of the fact that the narcotics agents were about to close down on the defendants. With the cooperation of agent Brown, the news reporters were able to televise the arrest at the mountain cabin. We do not commend this inappropriate utilization of the media by the police which resulted in a television spectacular for local area residents, many of whom were prospective jurors. Exploitation of the news media by the police in this fashion gives our criminal justice system the image of a "cat and mouse" game and lessens public regard for the dignity and professionalism of the police officer. In some instances, such tactics may violate protected rights of the defendant. *See, e.g., Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

In this case, the defendant claims that the publicity forced him to waive his right to a trial by jury. He was advised by the court, however, of his right to a change of venue and elected instead to be tried by the court. In short, he waived any claim which related to the televised publication of his arrest.

The judge who took the guilty plea from O'Neal disqualified himself, and another judge tried the issues relating to the defendant's guilt or innocence. The defendant voluntarily waived his right to a trial by jury, and any prejudice that may have occurred as a result of the television coverage of his arrest is harmless.

### IV.
### Chain of Custody

The substance that was sold to the undercover agents was tested by the undercover agents to determine that it was heroin prior to the time that Hodges and O'Neal were paid. Thereafter, the substance

was in the continuous possession of the agents and the police until it was analyzed by narcotics experts in the police laboratory. The evidence relating to agent Brown's possession of the heroin and its eventual transfer to the Colorado Bureau of Investigation laboratory was sufficient to make it convincingly clear that "between the receipt of this evidence and the analysis, there was no tampering or substitution." *White v. People*, 175 Colo. 119, 486 P.2d 4 (1971); *Melville, Manual of Criminal Evidence* (2d Ed. 1954).

Therefore, the defendant's claim that the chain of custody was so defective as to require a reversal of his conviction is without merit.

The remaining contentions of the defendant do not require discussion.

Judgment affirmed.

MR. JUSTICE HODGES does not participate.