**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Jack C. HODGES, Defendant-Appellant.**

**No. 27553.**

Supreme Court of Colorado.

Feb. 9, 1981.

Rehearing Denied March 9, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele-Sernovitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Shelley Gilman, Deputy State Public Defender, Denver, for defendant-appellant.

ROVIRA, Justice.

Jack Hodges (defendant) was convicted of the unlawful sale of a narcotic drug with intent to induce or aid another to unlawfully use or possess the drug and conspiracy to commit such violation.[1] He argues on appeal (1) that the trial court erred in making certain statements when ruling on the admission of evidence and (2) that there was insufficient evidence to support a conviction of the crime charged. We affirm.

The charges against the defendant arose out of the same transaction reviewed by this court in *People v. Vandiver*, 191 Colo. 263, 552 P.2d 6 (1976).[2]

Briefly stated, the facts as they relate to the defendant are as follows. During the summer of 1972, Kenneth P. Brown and David DeChant were working as undercover narcotics agents in Durango, Colorado. Brown contacted George O'Neal[3] and represented himself to be a purchaser of drugs. O'Neal indicated that he had a source of supply and could obtain a substantial amount of heroin. The discussions between Brown and O'Neal extended over a period of approximately six weeks.

O'Neal contacted the defendant, and arrangements were made for Brown and DeChant to purchase heroin from the defendant for $10,300. On the evening of August 28, 1972, the defendant and Vandiver took O'Neal to the motel where Brown and DeChant were staying. Later in the evening, the undercover agents and O'Neal went to a small house south of Durango. Upon arriving at the house, Brown and O'Neal were met by the defendant and went inside while DeChant remained outside. The defendant had a gun strapped to his waist and warned Brown that his partner (Vandiver) was outside with a gun and that he would kill Brown if he was a "narc."

The defendant told Brown that the heroin he had for sale was good and that it could be "stepped on" twice.[4] He then showed Brown a brown, powdery substance contained in two bags which were on a scale.

Subsequently, the substance was tested by Brown and DeChant; and after assuring themselves that it was heroin, they paid the defendant and O'Neal the amount agreed upon. After the payment, both defendant and O'Neal were arrested. Shortly thereafter, Vandiver was seen by other officers walking out of a nearby garage. Inside the garage, police officers found a cocked pistol with a cartridge in the chamber lying on the ground near Vandiver's wallet.

The defendant testified on his own behalf, and the gist of his testimony was that his participation in the transaction resulted from his desire to help O'Neal and to "rip off" Brown and DeChant by selling them a mixture of Nestle's Quik chocolate and ground up codeine tablets, falsely represented to be Mexican brown heroin. He

---

1. C.R.S.1963, 48–5–20(1)(a), (c), and (i). This section has been commonly referred to as the "hard sale" statute and, in its present form, is found at section 12–22–322(1)(b) and (h), C.R.S.1973 (1978 Repl.Vol. 5), as amended.

2. In *Vandiver, supra*, the defendant was convicted of sale of narcotics under C.R.S.1963, 48–5–2 [the so-called "soft sale" statute, now contained in section 12–22–302, C.R.S.1973 (1978 Repl.Vol. 5)], and of conspiracy to sell narcotics under 1971 Perm.Supp., C.R.S.1963, 40–2–201 [now section 18–2–201, C.R.S.1973 (1978 Repl.Vol. 8)]. The present defendant, Jack C. Hodges, was a codefendant of Vandiver but did not appear for trial on December 17, 1973. His bond was revoked and a warrant

issued for his arrest. In July 1976 he was apprehended and returned for trial.

3. O'Neal entered a plea of guilty to sale of narcotics on November 24, 1972.

4. "Stepped on" was defined by Brown as the process whereby the heroin is diluted with another substance such as Nestle's Quik in order to increase the amount which can be distributed and sold. The phrase is used synonymously with the expression "cut," referring to the dilution of drugs, such as heroin, as part of their illicit marketing. *See* J. McLaughlin, *The Drug Investigator's Manual* at 82; A. Moenssens, R. Moses, and F. Inbau, *Scientific Evidence in Criminal Cases* (1973 ed.) at 269.

contended that real heroin had been substituted for the brown, powdery substance which he sold the police officers and that, whatever its source, the substance identified and admitted as an exhibit in his trial was not what he sold the police. The jury evaluated the evidence and found the defendant guilty.

## I.

Defendant claims that the trial court erred in not granting his motion for mistrial because of two statements made by the trial judge when he was ruling on the admission of certain testimony and of an exhibit during the direct examination of the prosecution witness Brown. The defendant characterizes the statements of the trial judge as improper comments on the sufficiency of the evidence and an invasion of the province of the jury.

In the first instance the witness Brown was being examined by the district attorney concerning his first contact with the alleged coconspirators on August 28, 1972. Brown testified that he received three telephone calls from O'Neal that day, and, during the last call received about 8:30 p. m., O'Neal said that "he was on his way over and had some news about the deal for me." Defense counsel objected on the grounds of hearsay and that before any statement of O'Neal could be received in evidence, if it involved a coconspirator, the conspiracy must first be established.

Prior to this testimony, the trial court had heard extensive testimony from Brown concerning his meeting with the defendant, the sale and purchase of the heroin, and the arrest of the defendant, Vandiver, and O'Neal.

In response to the defense objection, the trial court stated:

"I think we have an overt act established by the Defendant concerning the transaction itself. That is the exchange of heroin for money. Now, this would be an overt act. O'Neal was present and I think he can testify as to the fact that made up the conspiracy, the overt act having already been established."

The second claimed error arose when the People moved the admission of the pistol found in the garage near Vandiver's wallet.

Upon objection by the defendant on the ground of relevancy, the People argued that, inasmuch as one of the charges against the defendant was conspiracy, they were entitled to introduce the weapon recovered from Vandiver, who was the person referred to by the defendant when he told Brown that his partner was outside with a gun and that he would kill Brown if he was a "narc." Defendant then argued at length and in detail that, while the pistol might possibly be admissible "under the res gestae of the crime of sale," it could not be considered in establishing a charge of conspiracy.

The trial court responded to these arguments in the following words:

"Well, I am going to admit the evidence because of the face [sic] that there has been sufficient evidence to show some sort of—to show a conspiracy. Mr. Vandiver was at the scene of this sale, as has been shown by Mr. Brown's testimony. There was a connection between the Defendant and Mr. Vandiver, as Mr. Vandiver was warned by Mr. Hodges to come on out, to give himself up, and he had previously warned the witness that there was a man outside who was armed. And later, this exhibit was brought into this witness. And he witnessed Mr. Vandiver outside of the house. I think there is sufficient evidence of working together between the Defendant and Mr. Vandiver to establish the overt act necessary, and the exhibit will be admitted."

The defendant moved for a mistrial after the direct examination of Brown was concluded and a recess had been held. The court denied the motion on the grounds that its rulings had been responsive to the defendant's evidentiary objections.

The trial court in submitting the case to the jury gave an instruction which stated in pertinent part that "the rulings and orders made by the Court and the remarks made by the Court during the trial and not direct-

ed to you, should not be considered by you in arriving at your verdict. The Court did not by any words uttered during the trial . . . give or intimate, or wish to be understood by you as giving or intimating, any opinion as to what has or has not been proven in this case, nor as to what are or are not the facts in this case."

The grant or denial of a mistrial rests on the trial court's sound discretion and will not be disturbed on appeal absent gross abuse of discretion to the prejudice of the defendant. *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976). *See People v. Alvarez*, 187 Colo. 290, 530 P.2d 506 (1975). In this case we find that the court's rulings did not invade the independent factfinding province of the jury. The judge's comments on the evidence were not personal and did not go to the weight of the evidence. *Cf. Sheftel v. People*, 111 Colo. 349, 141 P.2d 1018 (1943). The remarks were an explanation of the court's rulings in response to the arguments of counsel. *See People v. Garcia*, 186 Colo. 167, 526 P.2d 292 (1974). Our reading of the record supports the court's rulings, and we hold that under the circumstances the court's statements did not warrant the granting of a mistrial. The jury was aware that the defendant was charged with conspiracy, and the court's instruction to the jury properly cautioned them on the court's role and clarified the nature of their decision making.[5]

## II.

The defendant contends that there was insufficient evidence to establish that he sold or conspired to sell narcotic drugs with the intent to induce or aid another to use or possess drugs under the "hard sale" statute.

The defendant argues that in order to satisfy the specific intent requirement set forth in the "hard sale" statute the prosecution must prove beyond a reasonable doubt that the defendant initiated and solicited the sale in question. In support of this proposition, the defendant cites *People v. Bourg*, 191 Colo. 309, 552 P.2d 504 (1976); *People v. Patterson*, 187 Colo. 431, 532 P.2d 342 (1975); *People v. Bowers*, 187 Colo. 233, 530 P.2d 1282 (1975).

However, as we clearly indicated in *Mundt v. People*, 195 Colo. 145, 576 P.2d 165 (1978), those earlier decisions do not stand for the proposition that a conviction under the "hard sale" statute cannot be obtained if the police initiated or solicited the sale. We stated that all of the circumstances surrounding the transaction must be considered and that, in the absence of direct evidence of specific intent, circumstantial evidence may be sufficient to support the inference that the specific intent of the seller of narcotic drugs was to engage in the conduct proscribed by the statute. *People v. Bowers, supra*.

The question to be resolved then is whether, taking into consideration all of the evidence including the fact that the police officers initiated the contact with O'Neal, the record contains substantial evidence from which the jury could reasonably conclude that the defendant at the time of the sale had the requisite intent.

In testing the sufficiency of the evidence, we must determine whether the evidence, both direct and circumstantial, when viewed in a light most favorable to the prosecution, is substantial enough to support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt. *People v. Calvaresi*, 198 Colo. 321,

---

5. We do not wish to be understood as approving a trial court's practice of explaining its evidentiary rulings in the presence of the jury. This practice is particularly ill-advised where the explanation includes a statement with respect to the sufficiency of the evidence to show a crime charged or an element of such crime. In the case at bar, defense counsel made no contemporaneous objection and requested no contemporaneous explanatory or curative instruction. The remarks were addressed to counsel and not to the jury, and an instruction was given in submitting the case to the jury that remarks of that kind should not be considered in arriving at a verdict. The trial judge was in the best position to evaluate the degree of attention given by the jurors to the colloquy among court and counsel and to weigh the effect of the court's remarks upon the jury. It is against this background that we reach our conclusion that the trial court acted within its discretion in denying the motion for mistrial.

600 P.2d 57 (1979); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). Where the evidence reasonably supports the fact finder's determination of criminal guilt, we "will not set aside a conviction because a different conclusion might be drawn from the evidence." *People v. Rosenberg*, 194 Colo. 423, 427, 572 P.2d 1211, 1214 (1978).

■ The evidence at trial established that the substance which defendant sold to the police officers was heroin. The defendant represented it to be heroin, and the field test conducted by the police officers substantiated his representation.

In addition, the evidence showed that the defendant was offering for sale 315 grams, or approximately eleven ounces, of heroin for $10,300; he had a triple beam scale to verify the weight; he stated that the heroin was good and could be "stepped on" twice; he threatened Brown's life if he should turn out to be a "narc"; and he told Brown that his confederate was outside and armed.

The defendant's actions and representations, as testified to by both the prosecution's witnesses and the defendant, were clearly sufficient to allow the case to be submitted to the jury on the issue of whether the defendant had the requisite intent as required under the "hard sale" statute.

The cases relied on by the defendant, *People v. Bowers, supra; People v. Patterson, supra*; and *People v. Bourg, supra*, are not to the contrary. In *Bowers, supra*, the police persuaded a heroin addict to act as an informant and make a "buy" of narcotics from the defendant as a condition of being released on a personal recognizance bond. Later the police officers themselves, working under cover, initiated another purchase for $20. After his arrest, the defendant stated to police that "he did not make too much money from the heroin he was selling, just enough to support his habit." *Id.* 187 Colo. at 235, 530 P.2d at 1283. The evidence showed no "affirmative act" on the part of the defendant, directly or circumstantially, that would allow a reasonable inference of guilt under the "hard sale" statute. *Id.* at 238, 530 P.2d at 1285.

In *Patterson, supra*, the police, with the assistance of an informant, made a purchase of one gram of cocaine for $50 and ¼ teaspoon of heroin for $25 from the defendant. With the exception of undercover police officers, all those who were present when the sale of drugs took place were narcotic users. There was "no evidence of any kind" offered at trial which would support a rational inference that the defendant was a drug pusher who intentionally sought to increase and broaden his activities by encouraging others to use or possess narcotics. *Id.* 187 Colo. at 436, 532 P.2d at 345.

In *Bourg, supra*, the defendant sold two "lids" of marijuana to undercover police for $30. The police had initiated the transaction and discussed future purchases of larger quantities with the defendant. The court, nevertheless, found that no affirmative act on the part of the defendant was offered into evidence from which one could reasonably infer that the defendant solicited the sale at issue or that he persuaded or induced the police to make the purchase at issue.

The cases of *People v. Morris*, 190 Colo. 215, 545 P.2d 151 (1976), and *People v. Marquez*, 190 Colo. 255, 546 P.2d 482 (1976), are also distinguishable on their facts from the instant case. In *Morris, supra*, an informant, seeking leniency from authorities for the commission of a felony, actively solicited and brought about the sale of marijuana from the defendant through repeated contacts and importunity. The defendant committed no affirmative act to support the inference that he possessed the drugs with the intent to initiate a transaction, solicit a sale, persuade or entice a buyer to make a purchase, or induce or aid the buyer to use or possess narcotic drugs.

In *Marquez, supra*, an anonymous informant arranged for the purchase of heroin. The police officer went to the defendant's home with the informant and purchased the drug for $65. The record in the case was "totally devoid of any evidence" to support the defendant's conviction of "hard sale." *Id.* 190 Colo. at 257, 546 P.2d at 484. In the absence of such evidence, "or of further

circumstances from which [the defendant's specific] intent could reasonably be drawn," the court held that a conviction for this statutory offense cannot stand. *Id.* at 258, 546 P.2d at 484.

In the present case, Vandiver and O'Neal were not informants or undercover agents who actively solicited and brought about the sale. They were coconspirators with the defendant, each performing his own part of the transaction—O'Neal being the contact with the undercover agents and arranging the terms and conditions of the sale, Vandiver placing himself in a position to protect O'Neal and the defendant. The evidence shows that the defendant made the sale and collected the agreed upon price. Both the circumstances surrounding the transaction and the defendant's affirmative acts and statements support the jury's finding of guilt.

There was substantial evidence to submit the charge of "hard sale" to the jury. It was the jury's duty to weigh the evidence and make the determination of whether the defendant had the requisite intent required under the statute.

Judgment affirmed.

ERICKSON, J., specially concurs in the result only.

DUBOFSKY, J., does not participate.

ERICKSON, Justice, specially concurring in the result only:

I respectfully concur in the result reached by the majority, but do so for different reasons than those set forth in the majority opinion.

I disagree with the majority's analysis of the evidentiary issue relating to the proof of conspiracy and the right to the admission of hearsay evidence. In *People v. Braly*, 187 Colo. 324, 532 P.2d 325 (1975), we concluded that before the hearsay statements of an alleged co-conspirator can be admitted into evidence against the defendant, the prosecution must prove the existence of the conspiracy. In *Braly, supra*, this Court also stated: "Although the court may, in its discretion, allow the hearsay to be intro-

duced first, the independent proof requirement must be met before the jury may consider the hearsay statement of the alleged co-conspirator against the defendant...." *Id.* at 328–9, 532 P.2d 325. Thus, the issue here is whether there was evidence, direct or circumstantial, apart from the hearsay statements, sufficient to support a determination of the existence of the conspiracy.

The trial court found: "Well, I am going to admit the evidence because of the fact that there has been sufficient evidence to show some sort of—to show a conspiracy...." Although the trial court's finding that evidence of a conspiracy existed came in response to defense counsel's objection to the introduction of the weapon, this fact is not dispositive. In *Braly, supra*, we concluded that the court may, in its discretion, allow the hearsay to be introduced first. Accordingly, it was not error for the trial court to admit the hearsay statement of the co-conspirator against the defendant.

I agree with the majority that the trial court's statements made in the presence of the jury regarding the court's evidentiary conclusions do not warrant reversal. A motion for mistrial should only be granted under circumstances which demonstrate substantial and undue prejudice to the defendant. *People v. Goff*, 187 Colo. 103, 530 P.2d 514 (1974). Here, the jury was instructed that the rulings and orders made by the court during the trial should not be considered by the jury in arriving at its verdict. It must be presumed that the jury acted consistently with the court's instruction. *People v. Goff, supra.*

I also disagree with the opinion by Justice Rovira and the assertion that there was sufficient circumstantial evidence to establish a "hard sale." In my view, there was both direct and circumstantial evidence of a "hard sale." Additionally, I disagree with the majority's limitations and interpretations of our decisions in *People v. Bourg*, 191 Colo. 309, 552 P.2d 504 (1976); *People v. Marquez*, 190 Colo. 255, 546 P.2d 482 (1976); *People v. Morris*, 190 Colo. 215, 545 P.2d 151

(1976); *People v. Patterson*, 187 Colo. 431, 532 P.2d 342 (1975); and *People v. Bowers*, 187 Colo. 233, 530 P.2d 1282 (1975).

Accordingly, I concur in the result.