The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jae Michael LAURENT, Defendant–
Appellant.

No. 06CA0885.

Colorado Court of Appeals,
Div. IV.

July 24, 2008.

**1054**

John W. Suthers, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Ty Gee, Rachel A. Bellis, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

Defendant, Jae Michael Laurent, appeals the judgment of conviction entered upon a jury verdict finding him guilty of manufacturing methamphetamine, and of child abuse for manufacturing methamphetamine in the presence of a child.

Applying the supreme court's decision in *People v. Hillman*, 834 P.2d 1271 (Colo.1992), we consider and reject defendant's contention that he had a reasonable expectation of privacy in trash placed at curbside for collection. We further reject his constitutional challenge to the statute making it a crime to manufacture methamphetamine in the presence of a child. However, we agree that his conviction for manufacturing methamphetamine should merge into his conviction for manufacturing that substance in the presence of a child. We therefore affirm in part, vacate in part, and remand.

## I.

Defendant lived in Thornton with his three-year-old daughter. After receiving a tip from a confidential informant that defendant was manufacturing methamphetamine in his house, a detective from the North Metro Drug Task Force arranged to have an empty trash truck pick up defendant's trash so that the detective could inspect its contents. On a date when trash was scheduled for regular pickup in defendant's neighborhood, his roommate deposited the trash at the curb for collection and started to walk back to the house, when the trash was collected and placed in the empty truck. Police inspected the trash and discovered many items that are commonly used to manufacture methamphetamine. Police then obtained and executed a search warrant for defendant's house.

Chemical testing done by the Colorado Bureau of Investigation (CBI) on items recovered from the house revealed the presence of methamphetamine.

Defendant's case was tried to a jury, which found him guilty of two counts under section 18–18–405(1) and (2)(a)(I)(A), C.R.S.2007, and of one count under Ch. 358, sec. 1, section 18–6–401(1)(c), 2003 Colo. Sess. Laws 2383. The trial court merged the two convictions under section 18–18–405, and sentenced him to twelve years of intensive supervised probation on the two remaining counts, to be served concurrently, plus ninety days in jail. This appeal followed.

## II.

Defendant contends the trial court erred when it denied his motion to suppress the evidence obtained from the deputy's warrantless search of his trash because the search violated his right to privacy under the Colorado Constitution, as applied by the Colorado Supreme Court in *Hillman*. We disagree.

When reviewing a motion to suppress, we defer to the trial court's findings of fact, but examine its legal conclusions de novo. *People v. Arias*, 159 P.3d 134, 137 (Colo. 2007). Because the facts relevant to this issue are not in dispute, we turn to discussion of the applicable legal principles.

Article II, section 7 of the Colorado Constitution protects individuals from unreasonable searches and seizures. *Hillman*, 834 P.2d at 1273. "[T]he protections of [that section] do not extend to investigative activity that does not amount to a search or seizure." *Id.*

"Whether the contested activities constitute a search depends on whether the officer's 'actions intruded upon an activity or area in which the defendant held a legitimate expectation of privacy.' 'A legitimate expectation of privacy is one that society is prepared to consider reasonable.'" *Id.* (citation omitted) (quoting *People v. Wieser*, 796 P.2d 982, 984 (Colo.1990)). If the defendant held no legitimate expectation of privacy, the government action does not amount to a search or seizure. *Id.*

" 'Whether an asserted expectation of privacy is 'legitimate' depends on objective factors, not on the individual's subjective expec-

tations.' [The supreme court has] repeatedly emphasized that the existence of such an expectation can only 'be determined after examining all the facts and circumstances in each particular case.'" *Id.* at 1276 (citation omitted) (quoting *People v. Juarez,* 770 P.2d 1286, 1289 (Colo.1989), and *Wieser,* 796 P.2d at 984).

In *Hillman,* a sheriff's deputy picked up trash bags that had been placed for trash collection in an area adjacent to the defendant's home at the intersection of the driveway and sidewalk. The bags were tied shut, and their contents were not visible. At the police station, the bags were searched and found to contain marijuana and marijuana plants. Based on this discovery, police obtained and executed a search warrant for the defendant's home, where they found marijuana plants and items associated with processing marijuana for sale.

The supreme court in *Hillman* relied on a number of federal and state cases holding that there is no expectation of privacy in trash that is readily accessible to the public when placed for collection. *Hillman,* 834 P.2d at 1275–76 (collecting federal and state court cases, including *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), in which the Supreme Court concluded the Fourth Amendment did not prohibit the warrantless search or seizure of trash left outside of the home for collection). The *Hillman* court concluded that once the defendant placed his trash adjacent to the sidewalk in front of his residence, it was readily accessible to the public. It therefore held that article II, section 7 of the Colorado Constitution does not create a reasonable expectation of privacy in trash left adjacent to a public sidewalk for collection. *Hillman,* 834 P.2d at 1277–78.

Here, we follow *Hillman*'s reasoning and conclude that defendant did not have a reasonable expectation of privacy in his trash once it was left at the curb.

Defendant attempts to distinguish *Hillman* by arguing that he had a reasonable expectation of privacy in his trash because it was not readily accessible to the public in that his trash can was kept in a locked garage; it was only brought to the curb when the trash truck arrived; the trash service used a mechanical arm to empty the trash can, thus preventing driver observation of the contents; and the trash was sealed in opaque bags inside a trash can.

Defendant's focus on the steps taken to preserve the privacy of his trash before pickup is misplaced. Under *Hillman,* where, as here, trash is placed at curbside, it is presumed to be accessible to the public. *See id.* Given that the trial court made no finding that the public could not have accessed defendant's trash, we must conclude that defendant did not meet his burden to establish facts that would overcome *Hillman's* presumption of public accessibility.

■ We are not persuaded by defendant's argument that the trash collector was "deputized" by police to collect defendant's trash. Once the trash was placed at curbside for collection, it was publicly available, and could be opened and viewed by anyone, including law enforcement. *Id.* Indeed, nothing prevented the municipal trash collection entity from conducting its own inspection of defendant's trash, for example, to determine whether defendant was disposing of toxic waste, which, the record showed, he was. *See Greenwood,* 486 U.S. at 40, 108 S.Ct. 1625 (the trash collector, as a third party, might himself have sorted through the trash collected, or permitted others, such as the police, to do so). *Cf. People v. Aguilar,* 897 P.2d 84, 86 (Colo.1995) (although tow truck driver conducted search of impounded vehicle at suggestion of police, and was therefore a state agent for Fourth Amendment purposes, such was not dispositive of whether search was constitutional).

Therefore, we conclude that defendant did not have a reasonable expectation of privacy in his trash once he placed it at the curb for collection, and the search did not violate his rights under the Colorado Constitution. Accordingly, the trial court did not err when it denied his motion to suppress.

### III.

Defendant next contends the trial court abused its discretion by admitting the testimony of the People's CBI expert in forensic

chemistry. He does not dispute the expert's qualifications, the usefulness of the testimony to the jury, or the probative value of the testimony. Instead, he argues that the expert's opinion was unreliable because it was based on testing that was not done in accordance with a written, validated analytical method, and, as a result, the testing could not be independently repeated and the results verified. We are not persuaded.

The focus of a CRE 702 inquiry is whether the scientific evidence proffered is both reliable and relevant. *People v. Shreck,* 22 P.3d 68, 77 (Colo.2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). When determining the admissibility of evidence under CRE 702, the trial court should consider whether (1) the scientific principles to which the witness is testifying are reasonably reliable; (2) the witness is qualified to opine on such matters; and (3) the testimony would be useful to the jury. *Shreck,* 22 P.3d at 77, 79. In addition, the trial court should ensure that the probative value of the evidence is not substantially outweighed by unfair prejudice. *Id.* at 79; *see* CRE 403.

"Trial courts are vested with broad discretion to determine the admissibility of expert testimony under CRE 702, and the exercise of that discretion will not be overturned unless manifestly erroneous." *Masters v. People,* 58 P.3d 979, 988 (Colo.2002). " 'This deference reflects the superior opportunity of the trial judge to gauge both the competence of the expert and the extent to which his opinion would be helpful to the jury.' " *Id.* (quoting *People v. Williams,* 790 P.2d 796, 798 (Colo.1990)). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Prieto,* 124 P.3d 842, 849 (Colo.App. 2005).

A trial court's reliability inquiry under CRE 702 should be broad in nature and consider the totality of the circumstances of each specific case. *People v. Ramirez,* 155 P.3d 371, 378 (Colo.2007); *Shreck,* 22 P.3d at 77. Among the factors a trial court may consider are (1) whether the technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the existence and maintenance of standards controlling the technique's operation; (4) the frequency and type of error generated by the technique; and (5) whether such evidence has been offered in previous cases to support or dispute the merits of a particular scientific procedure. *Shreck,* 22 P.3d at 77–78 (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786, and *United States v. Downing,* 753 F.2d 1224, 1238–39 (3d Cir.1985)).

Here, the trial court made the following findings, supported by the record, regarding the methods underlying the expert's testimony: the CBI's Forensic Laboratory, which conducted the testing, was certified by the American Society of Crime Lab Directors, a third-party accreditation society that audits lab procedures to ensure that the standard operating procedures meet minimum standards; both the Infrared Spectroscopy and the Gas Chromatography/Mass Spectrometry methods used by the expert to conduct the chemical tests followed CBI standard operating procedures; the CBI follows standard procedures to maintain the instruments and to detect any error during the tests; and the expert had used the same techniques "hundreds or thousands of times" during her career, both in Colorado and when she worked for the Georgia Bureau of Investigations. *See Shreck,* 22 P.3d at 77.

Defendant argues that the methods used by the expert are not sufficiently reliable because the expert did not follow a "written analytical method." However, defendant fails to provide, and we are not aware of, any authority supporting his argument that a forensic chemistry expert is required to follow a "written analytical method" before the expert's testimony can be admitted under CRE 702. His argument is premised solely on the testimony of defendant's expert, which the trial court was free to disregard. *See People v. Howard,* 89 P.3d 441, 444 (Colo.App.2003).

Applying the totality of the circumstances standard, we have no basis upon which to conclude that the trial court abused its discretion in admitting the evidence because of

any lack of a written analytical method. Therefore, we conclude the trial court did not abuse its discretion in ruling that the prosecution expert's testimony was reasonably reliable and admitting it.

## IV.

Defendant contends that his conviction for child abuse premised on manufacturing a controlled substance must be vacated or reduced to a misdemeanor because Ch. 358, sec. 1, § 18–6–401(1)(c), 2003 Colo. Sess. Laws 2383 (section 18–6–401(1)(c)), is facially unconstitutional. We disagree.

## A.

▪ Defendant argues that the relevant version of section 18–6–401(1)(c) is facially overbroad because it infringes on the fundamental right to parent children. We are not persuaded.

▪ A statute is facially overbroad if, in addition to proscribing conduct that is not constitutionally protected, its proscriptions substantially impinge on the exercise of fundamental or express constitutional rights. *People v. Shepard,* 983 P.2d 1, 3 (Colo.1999). "Because a party whose conduct is legitimately proscribed may also raise the rights of others not before the court, the overbreadth of the statute must be real and substantial, judged in relation to the statute's plainly legitimate sweep." *Id.*

▪ Parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville,* 530 U.S. 57, 66–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *In Interest of C.R.C.,* 148 P.3d 458, 463 (Colo.App.2006).

## 1.

Section 18–6–401(1) (c), in effect at the time of defendant's offense, states, in relevant part:

A person commits child abuse if, in the presence of a child, or on the premises where a child is found, or where a child resides, the person engages in the manufacture or attempted manufacture of a controlled substance, as defined by section 18– 18–102(5), or possesses ephedrine, pseudoephedrine, or phenylpropanolamine, or their salts, isomers, or salts of isomers, with the intent to use the product as an immediate precursor in the manufacture of a controlled substance.

Although the statute was amended in 2006 (*see* section 18–6–401(1)(c)(I), C.R.S.2007), to add the mens rea element of "knowingly," in all other pertinent respects the amended statute is substantially identical to the version we analyze here.

Two separate types of conduct are sufficient to violate section 18–6–401(1)(c): manufacturing or attempted manufacturing of a controlled substance on the premises where a child is found, or where a child resides; or possession of any of the enumerated products with the intent to use any of them as an immediate precursor in the manufacture of a controlled substance.

While defendant was only charged under, and convicted of, the portion of the statute pertaining to manufacturing, he nevertheless contends that the statute is overbroad, based upon asserted unconstitutionality of the possession portion. He asserts that the possession portion of the statute unconstitutionally infringes on the right to parent, because a parent may be prosecuted for possession of legal substances in circumstances where he or she may intend to manufacture a controlled substance in a location where a child does not reside.

We conclude defendant lacks standing to assert overbreadth of the statute based on a provision under which he was not charged. *See People v. Rosenberg,* 194 Colo. 423, 426, 572 P.2d 1211, 1213 (1978) (where same section of statute proscribed several different types of conduct, defendant lacked standing to assert facial overbreadth challenge based on statutory conduct with which he was neither charged nor convicted). *See also Colten v. Kentucky,* 407 U.S. 104, 111 n. 3, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (defendant's challenge to other subsections of the statute under which he was not convicted were not properly before the court). Although *Rosenberg* was decided before *Shepard* and other cases in which standing analysis was expanded, defendant has cited no cases, and we have

found none, in which a defendant was determined to have standing to challenge a portion of a statute under which he or she was not charged or convicted.

### 2.

Defendant also challenges the statute as overbroad because it proscribes as felony child abuse the manufacture or attempted manufacture of controlled substances in a home where a child resides without proscribing as child abuse the commission of *other crimes* in a home where a child resides. We are not persuaded.

 "Limits on a parent's fundamental right to control the child's upbringing arise out of the state's interest as *parens patriae* ('parent of the country'). Thus, a state may exercise its *parens patriae* authority to guard children against imminent physical harm." *In Interest of E.L.M.C.*, 100 P.3d 546, 556 (Colo.App.2004). When circumstances place a child in imminent danger or affect the child's well-being, a state can properly intrude on that "private realm of family life" to protect the child from harm. *See Prince v. Massachusetts*, 321 U.S. 158, 166–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *In Interest of E.L.M.C.*, 100 P.3d at 556.

Defendant asserts that "nowhere does the legislature define as child abuse the commission of other crimes in a home where a child resides, even when such other crimes would be inherently more dangerous to the health and safety of the child" than the manufacture of methamphetamine. Even taking his assertion as true, defendant fails to explain how such a circumstance might tend to prove unconstitutional overbreadth of the statute.

### 3.

 Defendant also contends the statute is overbroad, because it does not differentiate based on the types of controlled substances manufactured, and the process of manufacturing substances such as marijuana may be less harmful than manufacturing methamphetamine. We are not persuaded.

 Standing to assert rights of those not before the court in posing a constitutional overbreadth challenge is reserved for asser-

tion of fundamental constitutional rights. *Ferguson v. People*, 824 P.2d 803, 807 (Colo. 1992). There can be no question that manufacturing controlled substances is not a fundamental constitutional right, and defendant has not explained how prohibition of such manufacturing would infringe on constitutionally protected activity. We therefore conclude he lacks standing to assert this claim.

Accordingly, we conclude section 18–6–401(1)(c) does not unconstitutionally infringe on parents' right to raise their children.

### B.

 Defendant also argues that section 18–6–401(1)(c) violates equal protection because (1) the legislature has not defined as child abuse the commission of other, more dangerous crimes in a home where a child resides, and (2) the penalties for a violation of the statute are inconsistent with the purposes of the criminal code, namely, to differentiate on reasonable grounds the seriousness of offenses and their related penalties. We are not persuaded.

 A statute is presumed to be constitutional, and a defendant has the burden to prove the statute's unconstitutionality beyond a reasonable doubt. *Campbell v. People*, 73 P.3d 11, 13 (Colo.2003). "The constitutional right to equal protection guarantees like treatment of persons who are similarly situated. Thus, the threshold question in an equal protection challenge is whether the person alleging disparate treatment is in fact similarly situated." *People v. Friesen*, 45 P.3d 784, 785 (Colo.App.2001). In the criminal law context, equal protection problems arise when different criminal penalties are imposed for similar criminal acts. *Id.* A single act may violate more than one criminal statute without violating the equal protection guarantee. *Campbell*, 73 P.3d at 14.

Addressing defendant's first argument, we conclude he has failed to demonstrate that persons who commit unspecified "other crimes" are similarly situated to him with respect to the crime he committed. It is within the prerogative of the legislature to proscribe one type of conduct as child abuse

without stating that all criminal conduct is child abuse. *See People v. Campbell,* 94 P.3d 1186, 1189 (Colo.App.2004) (the General Assembly may, consistent with equal protection guarantees, choose to impose a penalty for an act that it perceives to have graver social consequences than another act).

Defendant also compares subsection (1)(c), child abuse based on manufacturing a controlled substance, to the series of other subsections in section 18–6–401 proscribing child abuse as either a felony or misdemeanor, depending on the mens rea and the severity of injury to the child. *See* § 18–6–401(7)(a)(I)–(VI), C.R.S.2007.

We conclude subsections (1)(c), and (7)(a)(I) to (VI) of the statute do not affect persons who are similarly situated. To be found guilty under subsection (1)(c), a defendant must manufacture a controlled substance in the presence of a child. In contrast, subsections (7)(a)(I) to (VI) proscribe conduct that causes death, substantial bodily injury, or injury to a child. The types of behavior that give rise to conviction under subsections (7)(a)(I) to (VI) are not similar to the behavior defendant engaged in, namely the manufacturing of a controlled substance in a home where a child resides. Subsection (1)(c) does not require that the child actually be injured by an act of the defendant.

Because defendant was convicted of manufacturing methamphetamine, our conclusion is further supported by section 18–18.5–101(1), C.R.S.2007, where the General Assembly declared its concern about the use and manufacture of methamphetamine, highlighting its effect on children:

(a) Methamphetamine is a central nervous system stimulant that can be orally ingested, smoked, snorted, or injected;

. . .

(c) Methamphetamine continues to exhibit a high potential for addiction and abuse;

(d) Methamphetamine use and manufacturing places countless Colorado children at risk of methamphetamine ingestion and exposure to toxic chemicals, weapons, pornography, predators, and impaired and neglectful caretakers. These children are at increased risk of neglect as well as physical and sexual abuse.

In light of this legislative declaration concerning the special dangers posed to children by exposure to methamphetamine use and manufacturing, we conclude that defendant has not established he was similarly situated to those who commit other crimes involving children.

Defendant's reliance on *People v. Nguyen,* 900 P.2d 37, 41 (Colo.1995), for the proposition that the legislature "may not punish a more serious crime with a less severe penalty" is misplaced. In that case, the supreme court compared two classes of attempted assault, and concluded that because the sentencing range for attempt to commit serious bodily injury with a deadly weapon (two to eight years) is less than the range for attempt to commit bodily injury with a deadly weapon (five to sixteen years), the sentencing provisions violated equal protection. However, in *Nguyen,* unlike here, the persons affected by the two statutes were similarly situated with respect to the type of crime committed, namely those who attempted to commit assault with a deadly weapon.

Because subsections (1)(c) and (7)(a)(I) to (VI) of section 18–6–401 do not refer to similar criminal acts, defendant has failed to meet the threshold requirement for an equal protection challenge. Accordingly, his challenge fails. *See People v. Watkins,* 126 P.3d 309, 311 (Colo.App.2005) (the General Assembly may, without violating equal protection guarantees, treat child abuse offenses as crimes warranting more serious penalties than other offenses not involving abuse of children).

## V.

Finally, defendant contends his conviction for manufacturing a controlled substance under section 18–18–405(1)(a) should merge with his conviction for child abuse based on manufacturing a controlled substance under the version of section 18–6–401(1)(c)(I) in effect at the time of his conviction. We agree.

An accused may not be convicted of two offenses if one is included within the

other. § 18–1–408(1)(a), C.R.S. 2007; *People v. Abiodun,* 111 P.3d 462, 465 (Colo.2005). To determine whether one crime is included within another, as set forth in section 18–1–408(5)(a), C.R.S. 2007, we must apply the strict elements test. *See Meads v. People,* 78 P.3d 290, 293 (Colo.2003). Under this test, if proof of the elements of the greater offense necessarily proves the lesser offense, then the lesser offense is a lesser included offense. *Id.* at 294.

> Applying the strict elements test involves nothing more than placing the relevant statutes next to each other, comparing the language, and determining how closely they match. If the greater offense includes all of the elements of the lesser offense plus one or more additional elements, it is fair to say that the lesser offense is included within the greater offense. Conversely, if a comparison of the two statutes reveals that the lesser offense has substantively different elements than the greater offense, the lesser offense is not included in the greater offense and a defendant may be convicted of both.

*Meads,* 78 P.3d at 294.

The crime of manufacturing a controlled substance is committed when any person (1) knowingly (2) manufactures (3) a controlled substance. Under the circumstances presented here, this offense is a class three felony. *See* §§ 18–18–405(1)(a)–(2)(a)(I)(A); 18–18–204(2)(c)(II).

The crime of child abuse based on manufacturing a controlled substance is committed when a person (1) in the presence of a child, or on the premises where a child is found, or where a child resides, (2) engages in (3) the manufacture (4) of a controlled substance. Ch. 358, sec. 1, section 18–6–401(1)(c), 2003 Colo. Sess. Laws 2383. This offense is also a class three felony. § 18–6–401(7)(d). It is undisputed that methamphetamine is a controlled substance.

■ Under the statute in effect at the time of the offense, there is no mens rea specified for the crime of child abuse based on manufacturing a controlled substance. When a statute does not contain an explicit statement of the culpable mental state required for a conviction, the requisite mental state may be implied from the statute. *People v. Moore,* 674 P.2d 354, 358 (Colo.1984); *see* 18–1–503(2) ("Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such a culpable mental state"); *see also Alvarado v. People,* 132 P.3d 1205, 1207 (Colo. 2006) (when examining a criminal statute, we read its language to identify the proscribed act and the required mental state in accordance with the General Assembly's purpose and intent).

■ We conclude the mental state "knowingly" is implied in former section 18–6–401(1)(c) because the statute requires the accused to engage in the manufacture of a controlled substance. Both the terms "engage" and "manufacture" imply that the accused must be aware of the type of conduct participated in, and must seek to accomplish a particular task. *See* § 18–1–501(6), C.R.S. 2007 (a person acts knowingly when the person is aware that the person's conduct is of a certain nature and that the person's conduct is practically certain to cause the result).

Here, comparison of the two statutes shows that child abuse based on manufacturing a controlled substance includes all of the elements of manufacturing a controlled substance. Proof of child abuse based on manufacturing a controlled substance necessarily proves the elements of manufacturing a controlled substance.

We therefore conclude that manufacturing a controlled substance is a lesser included offense of child abuse based on manufacturing a controlled substance. We note that, while it is anomalous to conclude there is a merger of offenses when both crimes are the same degree of felony, merger is nevertheless required by section 18–1–408(1)(a). *See People v. Halstead,* 881 P.2d 401, 405–06 (Colo.App.1994); *People v. Fisher,* 904 P.2d 1326, 1329–30 (Colo.App.1994).

That part of the judgment of conviction finding defendant guilty of child abuse based on manufacturing a controlled substance is

affirmed. Defendant's conviction and sentence for manufacturing a controlled substance are vacated, and the case is remanded to the trial court for correction of the mittimus.

Judge CASEBOLT and Judge WEBB concur.