No. 22958.

EUGENE DAVID GONZALES *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(452 P.2d 46)

Decided April 1, 1969.

EDWARD H. SHERMAN, Public Defender in and for the City and County of Denver, TRUMAN E. COLES, Deputy, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT L. HOECKER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

BY information filed in June of 1966, the defendant was charged with the crimes of assault to murder, assault

with a deadly weapon, and conspiracy. Following a jury trial, the defendant was found guilty of assault with a deadly weapon and sentenced to four to five years imprisonment.

A recital of the facts is necessary for an understanding of the points relied on in this writ of error.

Shortly after midnight on June 18, 1966, nineteen-year old Daniel Juarez, the complaining witness, driving a car with a teenage friend, stopped for a traffic signal at the intersection of 7th and Kalamath Streets in Denver. Juarez testified that while he was waiting for the "go light" the defendant Gonzales and one Ernest Apolinar walked up to his automobile. Apolinar grabbed Juarez around the neck while defendant pointed a gun at him and called the teenagers "punks." Juarez escaped by quickly accelerating the car. Juarez had noted a couple of police cruisers parked a few blocks away, so returning there he found the policemen and told them of his encounter with the defendant.

There were at least five policemen and two police cars where Juarez sought help, but it was agreed that two officers, Juarez and his companion should return to the scene of the alleged assault, with the two policemen hiding on the floor in the back of Juarez' automobile. This plan was put into action, and the boys drove back to the vicinity of the alleged first encounter. They saw the defendant and Apolinar sitting on the front porch of a house, and, according to plan, Juarez parked at the curb and commenced to taunt and "dare" Gonzales and Apolinar to come out to the car. Their statements were such as: "Are you the one that pulled the gun on my buddy?"; "Well, why don't you come up here?"; and "If you were so brave with the gun before, why don't you come over here and show it to us again?" This taunting had gone on for several minutes when the defendant came unnoticed to the far side of the car, stuck a gun in the front window, and fired. The bullet nicked Juarez' head, but fortunately he was not seriously injured. At

the sound of the shot the police officers made their presence known and shouted for the defendant to halt. The police had to chase the defendant and Apolinar a short distance before apprehending them.

I.

The defendant's main argument is that there was an entrapment by the police and that the court erred in refusing to dismiss the charge against him on that ground.

 The defense of entrapment is defined generally in 22 C.J.S. *Criminal Law* § 45(2) as follows:

"One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of 'entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent."

It is further stated in that section:

"* * * Entrapment occurs only when the criminal conduct is the product of the 'creative activity' of law enforcement officials, that is, only where the criminal design originates in the mind of the police officer and not with the accused, * * *."

This court has had occasion to consider the defense of entrapment. As early as 1893, this court pronounced the following view of entrapment in *Connor v. The People,* 18 Colo. 373, 33 P. 159:

"* * * [W]e do say that when in their zeal, or under a mistaken sense of duty, detectives suggest the commission of a crime and instigate others to take part in its commission in order to arrest them while in their act, although the purpose may be to capture old offenders, their conduct is not only reprehensible, but criminal, and ought to be rebuked rather than encouraged by the courts. * * *"

In the more recent case of *Reigan v. The People,* 120 Colo. 472, 210 P.2d 991, the court made the following statement:

"* * * A suspected person may be tested by being offered opportunity to transgress the law in such manner as is usual in the activity alleged to be unlawful. However, law enforcement officers may not induce persons, who would not otherwise have committed crime, to violate the law. The former is legitimate 'detection' of crime, and is often necessary to efficient law enforcement. The latter is 'entrapment' to commit crime in which the officer's conduct instigates the offense, the commission of which was nonexistent in the mind of the intended victim of the 'entrapment'."

We note that the two boys returned to the scene of the original assault and taunted the defendant and Apolinar with abusive language, all at the behest of the police officers. However, the crime herein was the firing of the gun, and this intent and this result was not invited, suggested or instigated by the officers. Also, the officers had been told of the previous threat with a gun. This is somewhat analogous to a situation involving activity of an officer in buying liquor from one suspected of illegally selling it. In such a case this court has held the officer's activity to be legitimate detection and not entrapment. *See Claxton v. People,* 82 Colo. 115, 257 P. 347; *Simmons v. People,* 70 Colo. 262, 199 P. 416.

In the case at bar, we conclude that the officers merely provided an opportunity for the commission of the crime in order to identify and apprehend the alleged assaulters. Although the two boys did prompt the defendant to come to the car, they did not invite the criminal intent which was shown to be in the mind of the defendant by the senseless firing of the shot. We conclude that the defense of entrapment was not available.

We do not by this conclusion intend to condone the activities of the police officers in this case. The course

followed by the officers very well could have resulted in a serious injury or even death of one or both of the boys.

## II.

The defendant next argues that the trial court erred in instructing the jury on the crime of assault to murder. He argues that there was no evidence of malice which is a material element of that crime. We do not agree. The firing of a gun point-blank at the head of a person is an action from which malice can be inferred. In addition, in this record there was expert testimony as to the amount of pressure necessary to be applied to pull the trigger on the particular gun. The expert gave as his opinion that it required a considerable amount of finger-exertion and deliberateness. Proof of specific intent is necessarily circumstantial and inferable from all of the facts and circumstances surrounding the doing of the act. *Peterson v. People*, 133 Colo. 516, 297 P.2d 529. If the jury had returned a verdict finding the defendant guilty of the crime of assault with intent to murder, the evidence would have supported it. We perceive no error in submitting both counts to the jury although the jury found defendant guilty only of assault with a deadly weapon.

The defendant raises several other points of error in his brief which we do not consider to be significant or prejudicial.

The judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE PRINGLE and MR. JUSTICE LEE concur.