The PEOPLE of the State of
Colorado, Petitioner,

v.

Lloyd Dale SMITH, Respondent.

No. 79SC261.

Supreme Court of Colorado.

Feb. 9, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, Asst. Atty. Gen., Litigation Section, Denver, for petitioner.

J. Gregory Walta, Colorado State Public Defender, Richard P. Holme and Richard A. Sonntag, Sp. Deputy State Public Defenders, Denver, for respondent.

LEE, Justice.

Certiorari was granted to review the decision of the court of appeals in *People v. Smith*, No. 77–903, announced July 12, 1979, Colo.App. We reverse the court of appeals.

The defendant was charged in a three-count information with sale of a narcotic drug, cocaine, section 12–22–302, C.R.S. 1973 (now in 1978 Repl. Vol. 5), and with two counts of conspiracy to sell a narcotic drug, section 18–2–201, C.R.S. 1973 (1978 Repl. Vol. 8). Prior to trial, the court dismissed count three of the information, one of the conspiracy counts. The case was tried to a jury, which found the defendant guilty of count two of the information, the remaining conspiracy count. The jury was unable to agree on the substantive count of sale of a narcotic drug and the court declared a mistrial as to that count. Upon the district attorney's motion, the court ordered dismissal of that count.

The court of appeals reversed the district court, holding that the court should have granted defendant's motion for judgment of acquittal because the prosecution's evidence, even when viewed in the light most favorable to the prosecution, failed to disprove the procuring agent defense presented by the defendant. The court of appeals remanded with directions to enter judgment of acquittal.

The defendant's sole defense to the charges of sale and conspiracy to sell a narcotic drug was that he was the procur-

ing agent for the buyer of the drugs, and was not the seller and did not engage in a conspiracy with the seller. His defense was predicated on our decision in *People v. Fenninger*, 191 Colo. 334, 552 P.2d 1018 (1976). The procuring agent defense requires that the defendant act as an exclusive agent for the buyer. As such, the defendant becomes a principal, or a conspirator, in the *purchase* rather than in the sale of the narcotics and, therefore, he cannot be convicted of sale or conspiracy to sell. *People v. Fenninger, supra.*

█ When the issue of an affirmative defense is raised by the defendant and some evidence has been presented on that issue, then the guilt of the defendant must be established beyond a reasonable doubt as to that issue, as well as to all of the elements of the offense. Section 18–1–407, C.R.S. 1973 (now in Repl. Vol. 8). It is thus necessary to review the evidence in the light most favorable to the prosecution to determine if a reasonable juror could conclude that the prosecution had disproved the procuring agent defense beyond a reasonable doubt. *See People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

## I.

A review of the People's evidence shows that in mid-October 1976 Steve Skinner, a police informant, contacted the defendant, who was an acquaintance of only four months, at his place of work in regard to procuring some drugs for "friends from Golden." As a result of this contact, defendant met, on October 21, 1976, with Skinner and Investigator Aultman, a police officer on assignment to the Drug Enforcement Administration. This meeting was at a restaurant in Boulder some twenty miles from where defendant worked and lived. After meeting with Aultman, defendant telephoned his source to make sure the deal was still set. The defendant then led Aultman to a trailer park in north Boulder. After assuring Aultman that the cocaine to be purchased would be of good quality, the defendant took money from Aultman and disappeared for approximately five min-

utes. Upon his return he handed Aultman a packet containing cocaine.

As he left the trailer on October 21, Aultman mentioned to defendant that he might like to purchase a larger quantity of drugs. Defendant was to call Aultman when a quantity became available.

On November 1, 1976, Skinner again initiated a meeting between defendant and Aultman, which took place at the same restaurant. Defendant again telephoned his source to make sure the deal was set. The defendant and Aultman drove to the same trailer park where the previous deal had taken place. On this occasion, Aultman demanded to deal with the source directly. After defendant had entered a trailer to see if the source would deal on these terms, Aultman was ushered into the trailer where he met Mark Folsom, the source. Aultman bought cocaine directly from Folsom; the defendant handled neither the money nor the drugs. Defendant's conviction for conspiracy is based on this transaction.

On November 4, 1976, defendant telephoned Aultman to inform him that a large quantity was available. The price quoted was $575. The same procedure was followed. Aultman met the defendant at the same restaurant. Defendant telephoned to make sure the deal was still set, and the two men proceeded to the same trailer. This time they were accompanied by defendant's girl friend. The seller was Mark Pappas, Folsom's roommate. The drugs were not in the trailer. After waiting about ten minutes for the drugs to be delivered, Pappas left to get them himself. During his absence, a friend of the defendant appeared at the trailer and was freely admitted. Pappas returned and immediately began a telephone conversation with an unknown party. While Pappas was engaged in the telephone conversation, defendant informed Aultman that the price might be more than originally thought. Aultman refused to pay more. He laid the money on the table and picked up his drugs. Defendant picked up the money and, saying "Mark trusts me," counted the money. He then handed the money to Pappas, who put it in

his pocket without recounting it. Aultman left, saying that he would like to buy more drugs later on.

Defendant learned that more drugs were available. He tried unsuccessfully several times to reach Aultman, who was out of town. He finally reached Aultman on November 17, 1976, and another purchase was arranged. Aultman informed the defendant that he need not escort him [Aultman] to the trailer and that if the defendant had drugs or money coming he should settle up directly with the seller. Defendant responded that that would be "okay." The drug deal was subsequently consummated.

■ The following are circumstances connected with the drug transactions upon which the jury could reasonably conclude that the defendant was not acting as the *exclusive* agent of the buyer, but in fact was acting as the agent for the seller, thus negating the procuring agent defense: before each sale, an officer requested that defendant arrange for the purchase of drugs. The defendant did in fact set up the deals. The drugs were obtained on all four occasions from the two suppliers with whom the defendant was acquainted before these transactions occurred. The last two sales were for large amounts. In two of the sales the defendant handled money and in one sale he handled the drugs. The defendant went far out of his way to arrange these deals, especially considering his short acquaintance with and lack of compensation from Aultman. The defendant made positive representations as to the quality of the drugs. On one occasion, when a dispute as to price arose, defendant tried to persuade Aultman to pay the seller's higher price. While the seller was otherwise occupied with a telephone conversation, the defendant counted the money paid by Aultman, saying "Mark trusts me." This trust was borne out when Pappas, the seller, immediately thereafter put the money in his pocket without counting it. That the defendant was trusted by the seller is further bolstered by the evidence that defendant's girl friend and another friend were freely admitted to the trailer where drug deals were taking place. Aultman's direction to the defendant that he settle up with the sellers for any drugs or money owed him evoked an affirmative response, suggesting that he would do so. The defendant did not protest that he was not acting on the seller's behalf.

■ The defendant testified that the reason he engaged in the drug transactions was that he did it as a favor to Steve Skinner (the informant) and as a favor to his new friend, Aultman. He explained it made him feel like a bigshot to be "handling" or to be "around drugs." The jury, of course, as the sole judge of the credibility of the witnesses, was at liberty to disbelieve the defendant's explanation concerning his participation in the illegal transactions.

■ In our view, the jury could reasonably conclude from all the evidence presented that the defendant was not acting exclusively on behalf of the buyer, and that the guilt of the defendant was established beyond a reasonable doubt as to that issue as well as to all of the elements of the offense.

## II.

Since the court of appeals reversed the conviction on the basis of insufficiency of the evidence as it related to the issue of the procuring agent defense, it did not consider the defendant's further ground for reversal based on the court's refusal to give his tendered instructions on the procuring agent defense.

■ The defendant claims the instruction given the jury on the procuring agent defense was insufficient. In *Fenninger, supra*, we stated:

"* * * The jury was correctly instructed that if they found that defendant acted exclusively on behalf of the [Colorado Bureau of Investigation] agent, and not for the sellers, they would have to find him not guilty. * * *"

We have examined the instructions given by the court to the jury in this case and find they were sufficient to inform the jury of the affirmative procuring agent de-

fense.[1] We therefore hold that the court did not err in refusing to give the defendant's tendered instructions.

Accordingly, since we find that there was sufficient evidence to negate the procuring agent defense and find that the jury was properly instructed on the defense, we reverse the judgment of the court of appeals and order that the verdict of the jury be reinstated.

ERICKSON, J., does not participate.

---

1.  "INSTRUCTION NO. 8

    "It is an affirmative defense to the crimes of Sale of a Narcotic Drug and Conspiracy to Sell a Narcotic Drug that the Defendant acted exclusively on behalf of the undercover agent (the buyer), or his paid informant, and not for or as a seller."

    "INSTRUCTION NO. 9

    "The evidence in this case has raised the issue of the affirmative defense of procuring agent for the buyer. The prosecution, therefore, has the burden of proving to your satisfaction beyond a reasonable doubt the guilt of the defendant as to this issue, as well as to all of the elements of the crimes charged. If, after consideration of all of the evidence, you are not convinced beyond a reasonable doubt of the guilt of the defendant then you must return a verdict of not guilty to Sale of a Narcotic Drug and Conspiracy to Sell a Narcotic Drug."