Glen Barrington BAILEY, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Charles Allen HERNANDEZ, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Nos. C–1781, 79SC12.

Supreme Court of Colorado,
En Banc.

June 1, 1981.

Shelley B. Don, Denver, for petitioner Bailey.

Alfred C. Harrell, Denver, for petitioner Hernandez.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Sarah Scott Sammons, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.          ...

We granted two petitions for certiorari to review the court of appeals' decision in *People v. Bailey and Hernandez*, 41 Colo.App. 385, 590 P.2d 508 (1978). The defendants, Glen Barrington Bailey and Charles Allen Hernandez, who were convicted of sale and conspiracy to sell narcotics, argue that they were entrapped by law enforcement officials, that the conduct of the officials constituted duress, and that they were merely "procuring agents" for the officials who bought the narcotic drugs. In a trial to the court, the judge found that the evidence of entrapment and duress did not create a reasonable doubt as to the guilt of the defendants.[1] The court of appeals affirmed the district court convictions, and we affirm the opinion of the court of appeals.

As part of a Colorado Bureau of Investigation inquiry into the sale of drugs at Denver Juvenile Hall, a special operator for the C.B.I., Rick Hampton, posed as a Metropolitan State College student assisting the Juvenile Hall Recreation Supervisor. In late January, 1976, Hampton discussed the availability of drugs with the defendant Bailey, then a youth counselor at Juvenile Hall. Bailey told Hampton that he could obtain any drugs Hampton wanted. On February 2, 1976, Hampton informed Bailey that he was working for an East coast Mafia chieftain named Nick Bonelli, who was in Denver to take over the illegal drug traffic in Colorado penal institutions. Unknown to Bailey, Bonelli was, in fact, C.B.I. agent Kenneth Brown.

Hampton arranged a meeting between Bailey and Brown on February 6th at Bailey's home. Brown intimated to Bailey that his Eastern Mafia bosses were pressuring him to establish a foothold in the drug business as quickly as possible, and he asked Bailey if he could obtain large amounts of narcotics. Bailey replied that he could, and Brown requested samples of cocaine and marijuana. Brown also conveyed the impression that Brown's Mafia colleagues took care of "snitches."

Bailey delivered the samples of cocaine and marijuana to Brown later that day and received payment for them. During the next several days, Brown telephoned Bailey several times, telling Bailey that he was

---

1. The trial court did not rule on the "procuring agent" defense at trial. The defendants first raised the issue in their motions for a new trial. The court of appeals determined that the "procuring agent" defense was not applicable to the facts before us.

under considerable pressure to obtain a sample of heroin. On February 11, 1976, they met at a Howard Johnson's motel where Brown and Bailey discussed Bailey's potential role in taking over the drug traffic in Colorado's penal institutions. The conversation was recorded on a hidden microphone. Bailey told Brown that he would obtain a sample of heroin.

Late that evening, Bailey contacted the defendant Hernandez, also a youth counselor at Juvenile Hall, and asked him for assistance in finding a sample of heroin. Hernandez obtained a sample with the assistance of Shirley Veldez.[2] Hernandez delivered the sample to Bailey, and Bailey, in turn, delivered it to Brown the following day.

On February 13th, Bailey, Brown, and another C.B.I. agent, posing as the "family" accountant, met in a parked car to discuss the price of heroin and cocaine purchased in large quantities. Brown showed Bailey $100,000.00 in cash. Three days later, Hernandez, Bailey, and Brown met at Bailey's home. Hernandez told Brown that the heroin sample had come from his "connection," Shirley Veldez. Later that day, Hernandez delivered a second sample of heroin to Brown in Bailey's presence. Brown paid Hernandez for the sample.

On February 17th Brown met with Bailey, Hernandez and Veldez at Bailey's home, showed Veldez $35,000.00 in cash, promised to help her with a modeling career, and offered to arrange a trip to Florida for her. Veldez told Brown that she had furnished both samples of heroin to Hernandez for delivery to Brown. She also told Brown that the delivery of additional samples of heroin depended upon payment of a debt she owed to her "connection" in Pueblo. On February 18th, Brown telephoned Veldez to arrange the purchase of a

third heroin sample. He paid her for the sample when she delivered it later in the day. The defendants were arrested the next day.

At trial, the defendants admitted participation in the drug transactions, but denied their guilt of the offenses alleged on the grounds that the C.B.I. agents' conduct amounted to entrapment and duress. The trial court characterized the defendants' statements to Brown attesting to their familiarity with drugs and their intent to provide him with large quantities of drugs as "puffing" overtures calculated to determine the nature and extent of Brown's activities in drug traffic; just as Brown masqueraded as a professional criminal to ascertain the defendants' willingness to engage in illegal drug activities, the defendants masqueraded as persons having access to large amounts of illegal drugs.

The trial court found Bailey guilty of sale of cocaine and of dispensing a dangerous drug on February 6, 1976 and Bailey and Hernandez guilty of sale of heroin on February 12th, guilty of sale of heroin on February 16th, and guilty of conspiracy to sell narcotic drugs, all under section 12–22–302, C.R.S. 1973 (1978 Repl. Vol. 5).[3] The court rejected the defendants' entrapment defense, finding that the deception practiced by the C.B.I. simply furnished the defendants with an opportunity to engage in illegal drug sales and that the defendants knowingly and willingly took advantage of this opportunity. It also found, beyond a reasonable doubt, that the offenses committed by the defendants had not been procured by duress or unconstitutional police conduct.

The court of appeals upheld the trial court's findings rejecting defendants' entrapment and duress offenses. In so doing, it interpreted the entrapment statute as a

---

2. Veldez was one of the defendants convicted in the original action here. She died while this appeal was pending before the court of appeals, and the court of appeals dismissed her appeal.

3. Bailey was sentenced to the penitentiary for a term of not less than three and one-half years

nor more than seven years on each count, all sentences to be served concurrently. Hernandez was sentenced to the penitentiary for a term of not less than two years nor more than six years on each count, all sentences to be served concurrently.

codification of prior Colorado case law holding that there is no entrapment if the defendant was predisposed to commit the crime. We agree with the court of appeals' construction of the statute and find support in the record for the defendants' convictions.

I.

Entrapment is defined in section 18–1–709, C.R.S. 1973 (1978 Repl. Vol. 8): "The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used."

Under section 18–1–710, C.R.S. 1973 (1978 Repl. Vol. 8) entrapment is an affirmative defense which is to be submitted to the trier of fact. Once the defendant has presented credible evidence on the issue, the prosecution must prove beyond a reasonable doubt that no entrapment has occurred.

Section 18–1–407(2), C.R.S.1973 (1978 Repl. Vol. 8); *People v. Sanchez*, 40 Colo.App. 552, 580 P.2d 1270 (1978).

Defendants contend that the court of appeals misconstrued section 18–1–709. Emphasizing the statutory language exculpating a defendant who commits otherwise criminal acts if "induced to do so by a law enforcement official" and if "the methods used . . . were such as to create a substantial risk that the acts would be committed . . . .", the defendants argue that the statute enacts the "objective test" of entrapment propounded by minority opinions of the United States Supreme Court. In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); and *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), a majority of the Court based the availability of the entrapment defense on evidence that the defendant was not predisposed to commit the act alleged; a minority of the Justices, however, grounded the defense on the methods used by government agents to induce the defendant to commit the act.[4] The majority approach has been described as a "subjective" test of entrapment; the minority approach as an "objective" test.[5] *See People v. Adler*, Colo., 629 P.2d 569 (1981) (In *Adler* it was unnecessary to decide whether section 18–1–709 embodied the subjective or objective

---

**4.** In *Sherman v. United States, supra*, 356 U.S. at 382, 78 S.Ct. at 825, 2 L.Ed.2d at 856, Justice Frankfurter, concurring, described the minority test as an inquiry "whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." Because this approach focuses on the conduct of government agents rather than the defendant's predisposition to commit a criminal offense, evidence of the defendant's criminal reputation is irrelevant. In a subsequent case, Justice Rehnquist criticized the minority approach, arguing that by allowing a defendant to claim entrapment while preventing the government from replying that the defendant was ready to commit the crime, it hampered undercover police work aimed at detecting "victimless"

crimes. *United States v. Russell, supra*, 411 U.S. at 434–436, 93 S.Ct. at 1644–1645, 36 L.Ed.2d at 374–376.

**5.** An objective test is indifferent to the character or propensities of the individual defendant; instead it tests police conduct against generalized rules of proper and improper inducement drawn from the probable response of a hypothetical person. Under a subjective test, on the other hand, the outcome varies with each individual defendant's state of mind; no general standards governing the permissibility of police conduct are set. Note, *People v. Barraza: California's Latest Attempt to Accommodate an Objective Theory of Entrapment*, 68 *Calif.L. Rev.* 746 (1980).

test because the evidence failed to establish entrapment under either approach).

■ Since the defense of entrapment is not of constitutional stature, states are free to define it as they choose. Most states have adopted the subjective approach. *State v. Ford*, Minn., 276 N.W.2d 178 (1979); *Hill v. State*, 95 Nev. 327, 594 P.2d 699 (1979); *State v. Hanson*, 278 N.W.2d 198 (S.D.1979); *Lewandowski v. State*, Ind., 389 N.E.2d 706 (1979); *State v. Dickinson*, 370 So.2d 762 (Fla.1979); *but see People v. Barraza*, 23 Cal.3d 675, 591 P.2d 947, 153 Cal. Rptr. 459 (1979); *State v. Folk*, 278 N.W.2d 410 (N.D.1979); *Pascu v. State*, 577 P.2d 1064, 1065 (Alaska 1978).[6] On the other hand, commentators generally favor the objective test. *See, e. g.,* the authorities cited in *People v. Barraza, supra,* 23 Cal.3d at 688, 591 P.2d at 954–955, 153 Cal.Rptr. at 466–467.[7] The commentators have likened the entrapment controversy to the debate over the exclusionary rule: if both the government and the citizen break the rules, whose behavior should be punished? Under the objective theory, the defendant is excused because of the misconduct of the government; the subjective approach sanctions police conduct without question as long as the police actions are directed to persons predisposed to commit the offense charged. Note, *People v. Barraza: California's Latest Attempt to Accommodate an Objective Theory of Entrapment, supra,* n. 42 at 753.

■ Beginning with *Connor v. People*, 18 Colo. 373, 33 P. 159 (1893), Colorado has adhered consistently to the subjective test. *See People v. Sanchez, supra; People v. Vandiver*, 191 Colo. 263, 552 P.2d 6 (1976)[8]; *People v. Bucher*, 182 Colo. 211, 511 P.2d 895 (1973); *People v. Lee*, 180 Colo. 376, 506 P.2d 136 (1973); *People v. Ross*, 182 Colo. 267, 512 P.2d 1154 (1973); *People v. Simmons*, 179 Colo. 431, 501 P.2d 119 (1972); *Gonzales v. People*, 168 Colo. 545, 452 P.2d 46 (1969); *Reigan v. People*, 120 Colo. 472, 210 P.2d 991 (1949). When the General Assembly codified the entrapment defense in 1971,[9] the Revisor identified the statute's sources:

"This is codification of well-established case law. It is patterned after Michigan proposal section 640 and New York Code 75.05 (see Reagan [sic] v. People, 120 Colo. 472; Gonzales v. People, 168 Colo. 545)."

1971 Perm.Supp., C.R.S. 1963, 40–1–809 (Revisor's Comment).

**6.** Alaska was the first state to adopt the objective test, *Grossman v. State*, 457 P.2d 226 (Alaska 1969). There the entrapment defense deters the state from manufacturing crime by prohibiting "unreasonable or unconscionable efforts on the part of the police to induce one to commit a crime so that he may be arrested and prosecuted for the offense," *Pascu v. State, supra,* at 1067.

**7.** For example, the standard adopted in the Model Penal Code is objective. Section 2.13 provides:
"(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
(a) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
(b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."
Model Penal Code, section 2.13 (Proposed Official Draft, 1962).
Compare the Proposed Official Draft with an earlier subjective formulation:
"(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense he solicits, encourages or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so."
Model Penal Code, section 2.10 (Tent. Draft. No. 9, 1959).

**8.** In *Vandiver*, citing *Hampton v. United States, supra,* we characterized the Colorado entrapment defense as subjective because it focuses "on the intent or predisposition of the defendant to commit the crime, . . . rather than upon the conduct of the government agents." *People v. Vandiver, supra; People v. Adler, supra.*

**9.** C.R.S. 1963, 40–1–809 (1971 Supp.).

New York Code 75.05, upon which our statute is patterned, now appears at section 40.05 of the Penal Law Consol. art. 40. That section reads:

"In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for the purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

The wording of the statute bears a strong resemblance to the text of section 18–1–709. *See* p. 1065, *supra.* As interpreted by the New York Court of Appeals, section 40.05 enacts a subjective test of entrapment. *People v. Calvano,* 30 N.Y.2d 199, 282 N.E.2d 322, 331 N.Y.S.2d 430 (1972). *See also Hechtman, Practice Commentaries,* section 40.04 Penal Law, *McKinney's Consolidated Laws of New York, Annotated,* Book 39 at 125 (1975).

The New York statute, like section 18–1–709, incorporates the language "methods . . . such as to create a substantial risk that the acts would be committed . . ." which the defendants contend enacts an objective test in Colorado. To find that this phrase places our entrapment defense on an objec-

tive footing, we would, at the outset, have to close our eyes to the last sentence of both the Colorado and New York statutes which provides: "merely affording a person an opportunity to commit an offense is not entrapment." Second, we would have to read the expression "a person" [10] to refer to a hypothetical person rather than the defendant asserting the defense. The New York Court of Appeals premised its subjective interpretation of the New York statute on the supposition that "a person," in this context, refers to the defendant. So construed, there can be no entrapment under the New York statute unless the defendant himself is not a person disposed to commit the crimes charged. *People v. Calvano, supra.* The expression "a person" in the Colorado statute is susceptible of an identical interpretation.[11]

Had the Colorado General Assembly wished to adopt a hypothetical person standard, language which clearly delineates such a standard could have been employed. *Compare People v. Barraza, supra* ; Model Penal Code, section 2.13, *supra;* n. 7, *supra.* We choose to follow the New York Court of Appeals' interpretation of that state's entrapment statute in *People v. Calvano, supra,* which is consistent with our earlier decisions holding that Colorado adheres to the subjective test of entrapment. The defendant's predisposition to commit the crime, rather than the conduct of the government agent, remains the dispositive factor in determining whether entrapment has occurred. *People v. Sanchez, supra.*

The trial court in this case ruled that merely affording a person an opportunity to commit an offense is not entrapment under

---

**10.** In the New York statute, this expression occurs in the phrase "to create a substantial risk that the offense would be committed by *a person* not otherwise disposed to commit it." (Emphasis added.) The Colorado statute employs a similar but slightly different phrase: "to create a substantial risk that the offense would be committed by *a person* who, but for the inducement, would not have conceived of or engaged in conduct of the sort induced." (Emphasis added.)

**11.** Compare the Model Penal Code which leaves no doubt that the probable reactions of hypothetical persons, not the individual defendant, furnish an objective yardstick against which police conduct is to be measured:

"(1)(b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by *persons* other than those who are ready to commit it."

(Emphasis added.)

Model Penal Code, section 2.13 (Proposed Official Draft, 1962).

section 18–1–709. In denying the defendant's motion for judgment of acquittal on the grounds of entrapment, the court found that C.B.I. agent Brown merely afforded the defendants the opportunity to engage in the sale of drugs and that the defendants would have acted the same way if given another opportunity. The court then concluded that the prosecution had met its evidentiary burden of proving beyond a reasonable doubt that the defendants had not been entrapped. Our review of the record supports the trial court's findings and conclusion.

█ In addition to their statutory entrapment defense, the defendants contend, on ·independent Fourteenth Amendment grounds, that the conduct of the C.B.I. agents in this case was so outrageous that it deprived them of due process of law. We do not agree and instead concur in the trial court's ruling that the defendants' claim of outrageous police conduct. lacks support in the record.

We note, however, Justice Powell's concurring opinion in *Hampton v. United States, supra,* 425 U.S. at 495, 96 S.Ct. at 1653, 48 L.Ed.2d at 122, in which he refused to join the plurality in declaring that "no matter what the circumstances, neither due process principles nor our supervisory power could support a bar to conviction in any case where the Government is able to prove predisposition." Justice Powell's concern that outrageous police misconduct not go unexamined is consistent with our observation in *People v. Vandiver:*

"Absent outrageous conduct by the officers violating fundamental standards of due process, the focus remains on the defendant."

**12.** *People v. Vandiver* also involved C.B.I. agent Kenneth Brown. In *Vandiver,* Brown masqueraded as a "gangster." We recognized there that something more than ordinary persuasion characterized Brown's attempts to purchase narcotics from Vandiver, but held that the record did not support a conclusion that Brown threatened the use of force to consummate the drug transaction.

*People v. Vandiver,* 191 Colo. at 268, 552 P.2d at 9.[12] Similarly, the New York Court of Appeals in *People v. Isaacson,* 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y.S.2d 714 (1978), sustained a defense based on police misconduct. Under New York's subjective entrapment statute, the *Isaacson* court found that Isaacson was predisposed to commit the crime, but reversed his conviction because the police conduct which induced the defense was so egregious that it violated the due process guarantees of the New York Constitution.[13]

## II.

The defendants claim that implied threats by the C.B.I. agents constituted duress under section 18–1–708, C.R.S. 1973, which provides:

"A person may not be convicted of an offense, other than a class 1 felony, based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist. This defense is not available when a person intentionally or recklessly places himself in a situation in which it is foreseeable that he will be subjected to such force or threatened use thereof."

█ The defendants did not claim that the agents used actual force, nor did they infer from the agents' statements that they were in any immediate danger. The defense of duress is unavailable unless a defendant shows a specific and imminent threat of injury to his person under circumstances which leave him no reasonable alternative other than the violation of the law for which he stands charged; mere speculation that injury may occur is not

**13.** Isaacson was a graduate student in Pennsylvania with no prior criminal record. An informant, who had been the subject of police abuse, persistently solicited Isaacson, a former classmate, to obtain drugs as a personal favor to the informant. Isaacson initially was unwilling to help, but the woman with whom he lived used drugs, and she eventually assisted Isaacson in obtaining some drugs which he delivered to the informant.

sufficient. *People v. Trujillo*, 41 Colo.App. 223, 586 P.2d 235 (1979). Because duress is an affirmative defense, the prosecution must establish beyond a reasonable doubt the defendant's guilt as to that issue. Section 18–1–407(2), C.R.S. 1973 (1978 Repl. Vol. 8). The trial court found the defendants guilty beyond a reasonable doubt notwithstanding their defense of duress, and the record supports the court's ruling.

### III.

■ Finally, the defendants claim that they cannot be convicted of the sale and conspiracy to sell narcotic drugs because they were the "procuring agents" for the law enforcement officials who bought the drugs. The defense, predicated on *People v. Fenninger*, 191 Colo. 334, 552 P.2d 1018 (1976), requires that a defendant act as an exclusive agent for a buyer. As such, the defendant becomes a principal or conspirator in the purchase rather than the sale of the narcotics and, therefore, cannot be convicted of sale or conspiracy to sell narcotic drugs under section 12–22–302, C.R.S. 1973 (1978 Repl. Vol. 5). *People v. Smith*, Colo., 623 P.2d 404 (1981); *People v. Fenninger, supra*. In *Fenninger* and *Smith*, the defendants never handled either the money or the drugs, although they were present at some drug transactions. Here, the defendants were contacted by the agents and asked if they could obtain narcotics. The defendants located and purchased narcotics from their sources, and delivered the narcotics to the agents, receiving payment from them. We agree with the court of appeals that the procuring agent defense does not apply here where the defendants sold narcotic drugs to the agents.

Judgment affirmed.

ROVIRA and QUINN, JJ., do not participate.