The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

William Charles SPROUSE,
Defendant–Appellant.

No. 96CA1819.

Colorado Court of Appeals,
Div. I.

Dec. 11, 1997.

Rehearing Denied Jan. 29, 1998.

Certiorari Granted Sept. 8, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Justice ERICKSON.*

Defendant, William Charles Sprouse, appeals the judgment of conviction entered upon a jury verdict finding him guilty of

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum. Supp.).

criminal attempt to commit sexual assault on a child pursuant to §§ 18–3–405(1) and 18–2–101(1), C.R.S.1997. We reverse the judgment and remand to the trial court with directions to vacate defendant's conviction and sentence.

Defendant, a Montana resident, was arrested in Colorado by Arvada police as the final step in their execution of a "sting" operation to identify pedophiles and victims of child abuse.

The undisputed facts in the record indicate that defendant placed an ad in a sexually explicit Texas publication. He sought a "submissive female," "pretty w/slim build, 18–40 who craves father figure, spanking, kinky sex." He described himself as a "dominant," good looking male, age 47.

In November 1994, detectives in Arvada, Colorado, responded to defendant's ad by sending him an application to join a fictitious pen-pal organization which purportedly matched individuals having similar sexual interests. Both the pen-pal organization and the application form were products of the local police plan to ferret out pedophiles, both in and outside of Colorado. The application form included categories such as "Greek Culture," "Young Love," "Teenagers," and "Family Sex," which the detectives viewed to be terms used by pedophiles.

In December 1994, detectives received defendant's completed pen-pal application form, on which he had checked "Young Love," "Greek Culture" and "Teenagers." Detectives then prepared and mailed to defendant a completed pen-pal application from "Ann," a fictitious woman in her thirties. That application indicated that "Ann" had an interest in the same areas as those marked by defendant, but it included "Family Sex" as well as handwritten notations that "Ann" was also interested in "Sexual Education" and "Sexual Awakenings."

Defendant responded with the first of 17 letters which he and "Ann" exchanged over a five-month period. He introduced himself and asked her to explain the information contained in her application form. He stated that he wanted to experiment with "B.D." He indicated an interest in "oral, Greek, and spanking," and that his interests also included "marriage and [a] lot of sex."

Meanwhile, defendant wrote to the pen-pal organization to request applications from other members. He stated that he was not sure that "Ann's" interests were the same as his. He indicated that his interests were "spanking, B.D., Anal, Oral," and that he wanted "a female that likes all of this."

"Ann" then wrote to defendant and explained that she was looking for someone to give her fictitious eleven-year-old daughter some "T.L.C.," which is why she marked "Young Love" on her application form. "Ann" further explained that she had written sexual awakening and education on her application form with her daughter in mind. She claimed that she was "very nervous about saying much more as not everyone in society believes as I do," and that she was hesitant to say more without knowing "whether or not we are thinking along the same lines." "Ann" asked defendant to let her know "if this sounds like something you can help [us] with."

Defendant responded by sending a Christmas card and a letter in which he asked general questions about "Ann" and whether she would be interested in participating. He stated:

> I'm the kind of man who forms an opinion based on what I saw in your application and your letter. If I am wrong about your meaning Just explain what you do want and I'll see if it works for me.
>
> You already know where my interest[s] lie because I told you my interest[s] in my letter. As I read you[r] letter I concluded that you are interested in finding a man who will love and care for both yourself and Lisa.

Defendant stated that he "could very well be the man you are looking for."

"Ann" wrote back, stating that she wanted her daughter to be sexually trained. "Ann" indicated a desire to be present during the "lessons," which she viewed to be her daughter's "special time."

During the "pen-pal" relationship, "Ann" described the relationship among the three of them as that of "special friends" and asked

defendant if her daughter could call him "Uncle Charlie." At "Ann's" suggestion, defendant sent a Valentine card to the daughter.

"Ann" asked defendant whether he had "trained" anyone else. He replied that he had previously "trained" another girl and described the circumstances of that encounter to "Ann." "Ann" suggested that he travel to Colorado to "train" her daughter.

Defendant and "Ann" continued writing to each other. They exchanged information about their personal lives. Defendant questioned "Ann" about the use of books and videos as sexual training aids. "Ann" inquired about training methods and indicated her approval of defendant's ideas.

Defendant eventually agreed to travel to Colorado and "train" "Ann's" daughter during his vacation. He was invited to stay with "Ann" and the daughter, and letters were sent ostensibly from both "Ann" and "Lisa" expressing their excitement about meeting him.

Defendant came to Colorado in May 1995, approximately seven months after detectives first responded to his ad. Police rented several rooms at a local motel, where defendant was to meet "Ann" and her daughter. A detective wearing a wire posed as Ann, invited defendant to her room, and then escorted him across the hall to a room where her "daughter" was purportedly waiting for the "training" to begin. Defendant was arrested upon entering that motel room. Sexual paraphernalia was found in his car.

Defendant, who subsequently testified in his own defense, stated that he had no intention of having sex with an eleven-year-old. He told police that he could not believe a mother would allow a man to engage in sex with her child, that he had come to Colorado to determine the actual facts, and that he planned to report "Ann" to police if what she said was true. He stated that his own children had been molested and that he was concerned about adults molesting children.

Prior to trial, defendant raised the affirmative defense of entrapment and filed a motion for judgment of acquittal. After the prosecution's case-in-chief, and again after defendant presented his case, he moved for an acquittal based upon the prosecution's failure to meet its burden of proof.

The trial court denied the motion to dismiss on the basis of entrapment. However, it found that "the elements of entrapment are appropriate to allow the defendant [that] theory of defense in this case."

The jury was instructed on the burden of proof and the elements of both the crime charged and the affirmative defense of entrapment. The conviction here at issue resulted.

Defendant contends that the trial court erred by denying his motion for judgment of acquittal. He claims that the prosecution failed to carry its burden of proving beyond a reasonable doubt that he was predisposed, independent of the police action, to commit the alleged offense. We agree.

The court, on motion of a defendant or of its own motion, shall order the entry of a judgment of acquittal "if the evidence is insufficient to sustain a conviction" of the offense charged. Crim. P. 29(a).

In ruling on a motion for judgment of acquittal, a trial court must determine whether the evidence before the jury is sufficient in both quantity and quality to submit the issue of defendant's guilt or innocence to the jury. The issue is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty, beyond a reasonable doubt, of the crime charged. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

Defendant was convicted of attempted sexual assault on a child pursuant to § 18–3–405(1), C.R.S.1997, which provides:

> Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

A person commits criminal attempt if, acting with the culpability otherwise required for commission of an offense, he or she en-

gages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Section 18–2–101(1), C.R.S. 1997.

A basic premise of Anglo–American criminal law is that no crime can be committed by bad thoughts alone. W. LaFave & A. Scott, *Substantive Criminal Law* § 2.3(b) (1986). A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable. *Model Penal Code* § 2.01(1) (1985).

"The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime." *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848, 850 (1958). Here, the context for the commission of the crime was manufactured by the Arvada police. The minor child, as well as the minor child's mother, are both fictitious creations of the Arvada police that were products of a spurious set of police questions and correspondence.

Nevertheless, it has been held that the defense of factual or legal impossibility is not available in a prosecution for the crime of attempt. *Darr v. People*, 193 Colo. 445, 568 P.2d 32 (1977) (defendant received goods represented by police to be stolen). Consequently, the validity of the conviction at issue must be determined through an analysis of the entrapment defense.

In analyzing the defense of entrapment, the Colorado Supreme Court said:

In *Bailey v. People*, 630 P.2d 1062 (Colo. 1981), we held that [the entrapment statute] creates a subjective test that focuses on the state of mind of a particular defendant, and does not set a general standard for police conduct.... Later, in *Evans v. People*, 706 P.2d 795 (Colo.1985), we clarified that *Bailey* does not mean that police conduct should be ignored, but rather that 'the existence of any predisposition on the part of the defendant must be determined first, then the extent of any such predisposition must be considered in relation to the character of the inducements.' ... In particular, a jury must consider whether the methods used to obtain the evidence in question 'were such as to create a substantial risk that this particular defendant would engage in the sort of conduct induced' and 'were more persuasive than merely affording the defendant an opportunity to commit an offense.'

*Vega v. People*, 893 P.2d 107, 119 (Colo.1995).

A conviction based on a record lacking any relevant evidence of a crucial element of the offense charged is constitutionally infirm. *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Due process guarantees to the criminal defendant that the prosecution must prove every factual element necessary to constitute the crime charged beyond a reasonable doubt before the defendant may be convicted and subjected to punishment. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). "No person shall be convicted of any offense unless his guilt thereof is proved beyond a reasonable doubt." Section 18–1–402, C.R.S.1997.

The prosecution has the burden of disproving affirmative defenses. *Lybarger v. People*, 807 P.2d 570 (Colo.1991). Entrapment is a statutory affirmative defense. Section 18–1–709, C.R.S.1997. "If the issue involved in an affirmative defense is raised, then the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all other elements of the offense." Section 18–1–407(2), C.R.S 1997.

Here, defendant presented credible evidence of entrapment, and the prosecution had the burden of proving beyond a reasonable doubt that entrapment did not occur. *See Vega v. People, supra.*

Entrapment consists of the following elements:

(1) the defendant must be a person who, but for the inducement offered, would not have conceived of or engaged in conduct of the sort induced;

(2) the defendant must in fact have engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and not as a result of the defendant's own predisposition;

(3) the methods used to obtain such evidence must have been such as to create a substantial risk that this particular defendant would engage in the sort of conduct induced; and

(4) the methods used must have been more persuasive than merely affording the defendant an opportunity to commit an offense, even when such an opportunity was coupled with representations or inducements calculated to overcome the defendant's fear of detection.

*Vega v. People*, 893 P.2d 107, 119.

█ Each of the first three elements requires joint consideration of the nature of the inducement and the extent of defendant's predisposition. The only situation in which the prosecution could rely solely on defendant's predisposition would occur if the prosecution proved that defendant would have committed the crime even if police had offered no inducement more persuasive than merely affording him an opportunity to commit the crime. Any degree of predisposition short of this would require the extent of predisposition to be measured against the extent of the inducement provided. *Evans v. People, supra.*

█ The fact that police merely afford opportunities for the commission of an offense does not foreclose prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. In their zeal to enforce the law, however, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that law enforcement authorities may prosecute. *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

█ Where the government has induced an individual to break the law and the defense of entrapment is at issue, the prosecution must prove beyond reasonable doubt that defendant was disposed to commit the criminal act prior to first being approached by law enforcement agents. Such a determination is generally a question of fact. *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

█ A defendant's predisposition is to be assessed as of the time a government agent first suggested the crime. *Sherman v. United States, supra.* Evidence that merely indicates a generic inclination to conduct acts within a broad range, not all of which are criminal, is of little probative value in establishing the predisposition required to defeat the entrapment defense. *Jacobson v. United States, supra.*

█ The defense of entrapment reflects the view that the proper use of criminal law is to prevent harmful conduct for the protection of the law abiding, rather than to purify thoughts and perfect character. *United States v. Hollingsworth,* 27 F.3d 1196 (7th Cir.1994).

█ In a typical "sting" operation, in which a person is simply provided with the opportunity to commit a crime, the commission of the criminal act itself demonstrates predisposition. Had the defendant in this case promptly availed himself of such an opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction. *See Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988).

█ However, defendant was provided with more than mere opportunity to commit the crime of sexual assault upon this nonexistent child. Although he had no prior convictions and was not previously suspected of engaging in such criminal activity, he was the target of an elaborate scheme created by the police for the sole purpose of enticing him to attempt such conduct.

Posing first as a fictitious pen-pal organization which offered to help "find people you can trust to talk with about your fantasies," police initiated contact with defendant, who was promised discretion and the opportunity

to contact "pen pals who share the same or similar interests."

Police then sought to engage defendant in such a relationship by posing as a woman having sexual interests similar to those expressed by defendant. When defendant expressed interest in "Ann," she indicated that she was also seeking a "special teacher" for her fictitious eleven-year-old daughter.

Defendant's subsequent response to such inducements is not enough to establish beyond a reasonable doubt that he was predisposed, prior to the government acts intended to create predisposition, to attempt sexual assault on a child. Evidence that he was ready and willing to commit such an offense came only after police officers, posing as a mother and daughter, contacted him and expressed a desire to receive sexual "training" for a minor from him. *See Jacobson v. United States, supra.*

Prior to that contact, defendant placed an ad which was not illegal and did not contain wording that he was interested in sexual activity with minor children. Defendant's pen-pal application form, which was prepared by police, included some of the categories police viewed as some of the characteristics of pedophiles.

However, defendant's first letter to the fictitious 30–year–old "Ann," sent prior to the time Arvada police first suggested the crime, focused solely on his desire to have a relationship with her if their interests were compatible.

After being contacted by "Ann," defendant indicated that he was interested in a sexual relationship, including marriage, and that he was interested in a woman having similar interests. Defendant questioned the meaning of the terms used in "Ann's" application, and stated that he was not sure that her interests were the same as his.

Defendant did not participate in any criminal act or conduct with a minor child. The record contains no evidence that defendant, prior to the time Arvada police suggested that he engage in sexual activity with a minor, intended to attempt such activity when he placed his ad or when he first responded to "Ann's" application. Only after repeated encouragement and suggestions from "Ann," including her statement that it was her "dream" to be present during the "training," did defendant engage in any conduct constituting a substantial step toward sexual contact with the imaginary police-created daughter.

A transcript of the tape-recorded conversation between defendant and "Ann" just prior to his arrest indicates that he stated: "I didn't understand what you were talking about for about the first three letters, you know."

Although the evidence would support a finding that defendant had become predisposed to break the law by May of 1995, when he traveled to Denver to meet "Ann" and her fictitious daughter, the prosecution did not prove that his predisposition was independent and not the product of the attention that police had directed towards him since November of 1994. *See Jacobson v. United States, supra.*

We conclude that the prosecution failed, as a matter of law, to adduce evidence to support the jury verdict that defendant was predisposed, independent of law enforcement acts and beyond a reasonable doubt, to violate the law by attempting to commit sexual assault on a child. *See People v. Gonzales,* 666 P.2d 123 (Colo.1983) (the issue of the sufficiency of the evidence is a question of law).

Absent such evidence, the prosecution failed to carry its burden of disproving the affirmative defense of entrapment. Thus, the trial court erred in denying defendant's motion for judgment of acquittal at the end of the prosecution's case. *See Johns v. People,* 179 Colo. 8, 497 P.2d 1253 (1972) (denial of judgment of acquittal reversed where evidence insufficient to support jury verdict of guilty of possession of narcotics); *Velarde v. People,* 179 Colo. 207, 500 P.2d 125 (1972) (same where evidence insufficient to support jury verdict of robbery and conspiracy to commit robbery).

In light of our holding as to this issue, we decline to address defendant's contentions that the action taken by local police was contrary to the public policy of Colorado and

that it constituted outrageous governmental conduct violative of his due process rights.

The judgment is reversed, and the cause is remanded with directions to the trial court to vacate the judgment and mittimus as to the charge of criminal attempt to commit sexual assault on a child and to enter a judgment of acquittal.

TAUBMAN, J., concurs.

METZGER, J., dissents.

METZGER, Judge, dissenting.

I respectfully dissent.

Although not specifically stated, a critical assumption of the majority's analysis is that, since the victim "Lisa" and her mother "Ann" were fictional characters invented by the Arvada police, it was impossible for defendant to have committed the crime of attempted sexual assault on a child. I disagree.

First, defendant did not assert the affirmative defense of impossibility either at trial or on appeal. Thus, it should not form the basis for a reversal of his conviction. *See People v. Lesney*, 855 P.2d 1364 (Colo.1993).

Second, since, in *Darr v. People*, 193 Colo. 445, 568 P.2d 32 (1977), the supreme court held that the General Assembly intended that the defense of factual or legal impossibility should not be available in a prosecution for the crime of attempt, I would not consider it. *See also* § 18–1–504, C.R.S.1997.

Moreover, if, as here, a defendant "does every act within his power" to commit an offense and would have committed it if the facts had been as he believed them to be, then he may not escape criminal liability. *See People v. Borrego*, 738 P.2d 59 (Colo.App. 1987).

For these reasons, I cannot agree with the majority that the affirmative defense of impossibility should be any factor, let alone a critical factor, in evaluating the evidence and issues in this case.

In my view, the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to withstand defendant's motion for directed verdict. *See People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

The evidence at trial showed that defendant's initial ad was worded in a code indicating his interest in sexual exploitation of children. Defendant's application to the pen-pal organization also demonstrated his "interest" in several categories characteristic of pedophiles: "young love," "Greek culture," and "teenagers." And, in defendant's response to "Ann's" first letter, in which she briefly mentioned her wish for "TLC" for her 11-year old daughter, he said:

> As I see it you also want Lisa to learn about sex and all of it's [sic] aspects. And as I read on it sounds like you want someone who will participate in both you and her educations along those lines. Am I right?
>
> ... I came to these conclusions because you seem to mention that your main concern is Lisa. Also because you marked 'Young Love' and 'Family Sex' which also mean to me that you are also interested in your own participation which I wholly approve of. If this is what you want then I could very well be the man you are looking for. And, if this is not what you are thinking I may still be your man....
>
> I'm also a nice guy. I'm very loving, caring, serious, romantic, and love children.

In later letters, all of which were sent by priority mail, defendant outlined in graphic detail his plans for "Lisa." He expressed no hesitation or reluctance; instead, he actively pursued what he envisioned as an opportunity to exploit this young girl.

In cases where entrapment is an issue, the determination of a defendant's predisposition to commit an offense is a question of fact. *Jacobson v. U.S.*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). I would hold that the trial court correctly applied the law in denying defendant's motion for judgment of acquittal and in allowing the jury to decide the factual issues of entrapment and predisposition. And, because the record supports

the jury's verdict, I would affirm defendant's conviction.